## ANN RAY *v.* M. HARRIS et al.

The conduct and declarations of both parties to a written agreement, may be admitted to prove a fraudulent simulation.   Such is also the rule of the common law.

At the common law, a person who receives property under a fraudulent conveyance, to screen it from the debts of the owner, cannot sustain the conveyance in an action against a subsequent vendee who derives title from a sale by the same owner.

APPEAL from the District Court of East Feliciana, *Stirling,* J.   *Stocton and Sawyer,* for plaintiff.   *James H. Muse,* for defendants.   By the court :

PRESTON, J.   The plaintiff, residing in the State of Mississippi, brings this suit to recover a number of negroes from several defendants.   She claims them under a bill of sale made to her by her brother-in-law, *Thomas C. Patterson,* in Lawrence county, in the State of Mississippi, on the 2d day of August, 1839.

The defendants hold the slaves by virtue of notarial titles, made to them by one *O'Connell,* in the parish of East Feliciana, in the year 1841 ; and he derived title by a like act, from the same *Thomas C. Patterson,* dated the 15th of April, 1841.

The defendants aver, that "the pretended act of sale mentioned in the plaintiff's petition, if any such exists, was and is a false, fraudulent and collusive act and transaction between the said *Patterson* and plaintiff, *Mrs. Ray,* entered into without consideration, and intended to defraud all and every person who has had or might have dealings with one or other of said parties, and the plaintiff ought not, and should not have any action based on said pretended, false and fraudulent instrument."

This pleading clearly indicated to the plaintiff, that the defendants intended to show that the bill of sale, upon which she relied as the foundation of her suit,

was a fraudulent simulation. She took no exception to the answer, and throughout the suit the defendants contested her title on this ground.

The witnesses, as usual in such cases, are numerous; the examination and cross-examinations protracted and tedious; the record is studded with bills of exception, and is extremely confused and voluminous.

We do not deem it incumbent upon us, in this case, to digest and detail the testimony, or even to express an opinion on all the bills of exception. Those which were taken to the admission of evidence to show the acts and declarations, and even the silence and omissions of the plaintiff when she should have acted, and also the acts and declarations of *Patterson*, her apparent vendor of the slaves, we think unfounded. The defendants are sued by virtue of a bill of sale made in Mississippi many years before the commencement of the suit, and also anterior to their open possession, in good faith, of the slaves, under formal titles made in Louisiana, and derived from the same vendor. They allege that the title made to the plaintiff, by this vendor, is a false title; " a pretended title, made without consideration; a fraudulent title;" in a word, a fraudulent simulation.

They undertake to show this, and under our laws may do so; and the conduct and declarations of both parties to the instrument have always been admitted in evidence for that purpose. And we do not believe that, at common law, a fraudulent paper which, after accomplishing its purposes of screening property from the just pursuit of creditors, has slept for years as a nullity, could afterwards be raked up and successfully used for the fraudulent recovery of the property from *bona fide* purchasers, from the real owner. And, further, that the acts and declarations of the parties to the paper might be given in evidence to show it a fiction, in defence of such a suit. This being established, there is ample evidence in the record, which is manifestly legal and free from other exceptions, to lead us to the conclusion, with the jury and district court, that there should be judgment for the defendants.

The bill of sale purports to transfer from *Patterson* to the plaintiff, fifteen slaves, wagons and oxen, horses, and stocks of cattle and hogs, household furniture and family utensils, in consideration of eight thousand seven hundred and twenty dollars to him paid. He had just been sued for a large debt, and the evidence leaves no doubt on our minds that he was embarrassed, if not insolvent, and had, therefore, motives to make an apparent sale of his slaves to his sister-in-law, the plaintiff. It is hardly pretended, that he delivered the other effects mentioned in the bill of sale.

The evidence satisfies us that the plaintiff, *Mrs. Ray*, was also embarrassed at the time; that she not only had not eight thousand seven hundred and twenty dollars, but no means to make such a purchase. She was a widow woman, kept a boarding house in the interior of the State, not even in a village, was raising her family expensively, and had but little property.

As soon as the sale was made, in Lawrence county, *Patterson* moved near to her, in Franklin county, and, we think, kept possession of all the property except a few of the slaves. He soon afterwards moved to Clinton, in Louisiana, and there possessed and sold the slaves. We do not believe that they ran away or were stolen by him, but that he took them away from the State of Mississippi because they were, in reality, his own property.

*Patterson* claimed hire for the slaves while they were in the plaintiff's possession. She claimed five hundred dollars from him as a reason for retaining them, but

entirely failed to make the efforts to reclaim them when taken away, which would have been made by a real owner.

The evidence convinces us that the plaintiff knew that *Patterson* had brought the slaves to Clinton, in Louisiana, and that he had sold some and kept others; and that she acquiesced in it three or four years, because the slaves were his, and not hers.

It is inconceivable that she should have placed her daughter at his house, for the purpose of education, at Clinton, knowing that he had stolen, and was in possession of, some of her slaves.

An intimate and confidential intercourse existed between the plaintiff and her brother-in-law, *Patterson*, and his family, after he sold the slaves in Louisiana, and even to the present time; which is utterly inconsistent with the supposition that he run off her slaves, to her knowledge, and sold them in Louisiana

We have strong reason to believe that this suit is prosecuted, not for her benefit alone, but also for the benefit of *Patterson*, who sold the slaves in Louisiana, received the price, and under which sale the defendants hold the title and possession of the slaves.

We will not recapitulate the evidence in detail, but will observe generally, that we have rarely had under consideration a suit in which we were more strongly convinced of an attempt to impose upon the court, and deprive honest purchasers of their property, by a false and fictitious sale.

The judgment of the district court is affirmed, with costs.